UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MIGUEL BAPTISTA,

                             Plaintiff

      v.                                         9:04-cv-0600
                                             (LEK/GHL)
ONONDAGA COUNTY DEPARTMENT OF
CORRECTIONS and ONONDAGA COUNTY,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES:**                            **OF COUNSEL:**

Law Offices of George S. Mehallow        George S. Mehallow, Esq.
2700 Bellevue Ave.
Syracuse NY 13219
*Attorney for Plaintiff*

Office of the County Attorney              Anthony P. Rivizzigno, Esq.
John H. Mulroy Civic Center, 10th Floor    Kathleen M. Dougherty, Esq.
421 Montgomery St.
Syracuse NY 13202
*Attorneys for Defendants*

LAWRENCE E. KAHN
United States District Judge

## MEMORANDUM-DECISION and ORDER

      Plaintiff Miguel Baptista commenced the instant action against Defendants pursuant to 42 U.S.C. § 1983 alleging that their failure to provide adequate medical treatment to him while he was incarcerated at the Onondaga County Correctional Facility violated his rights as guaranteed by the Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. Presently before the Court is Defendants' Motion to preclude Plaintiff's

expert from testifying and for summary judgment pursuant to Rule 56 of the *Federal Rules of Civil Procedure* seeking dismissal of the Complaint in its entirety.

## I.      FACTS

From May 23, 2001 through November 4, 2002, Plaintiff was an inmate at the Onondaga County Correctional Facility ("OCCF"). On Saturday, December 15, 2001, Plaintiff jammed the middle finger of his right hand while playing basketball. Within forty-five minutes of the injury, Plaintiff was brought to the medical unit at the OCCF and examined by Ann Samonte, R.N. Samonte noted that Plaintiff's finger had swelling around the metacarpal joint. Samonte further noted that Plaintiff was able to flex his finger with assistance, and that she could hear a pop when he bent his finger. Plaintiff's finger was "buddy-taped" to his ring finger, and he was provided ice for swelling and 800 milligrams of Motrin for one week for pain. Samonte also added Plaintiff to the medical doctor's sick call list for Monday, December 17, 2001.

Plaintiff was next seen by medical personnel on Sunday, December 16, 2001. Plaintiff's finger was noted to be swollen. Plaintiff was unable to bend his finger. The finger was again "buddy-taped" and an ice pack was applied. Dr. Mark J. Shaw was contacted and restricted Plaintiff from work and recreation. Although Plaintiff was scheduled to see the OCCF physician on December 17, 2001, he did not appear because of a court appearance.

Plaintiff was examined by Dr. Shaw on December 18, 2001. Plaintiff's finger was found to be swollen around the PIP joint. Plaintiff was able to fully extend his finger, but unable to flex his finger due to pain. Shaw ordered a splint and x-rays. Shaw ordered a follow-up visit after the x-rays were taken.

Plaintiff's finger was x-rayed on December 20, 2001. The x-ray revealed a "volar plate fracture of the middle phalanx." Based on the results of the x-ray, Shaw ordered that Plaintiff's middle finger be "buddy taped" and splinted with tongue depressors from the tips of the fingers to the middle of his hand. Plaintiff's case also was submitted for medical staff review on Monday, December 24, 2001 to evaluate the need for follow-up with the Orthopedic Hand Clinic (the "Hand Clinic").

On December 24, 2001, Chief Facility Emergency Physician Mark Johnston reviewed the x-ray report. Consent was obtained to permit Plaintiff to be seen at the Orthopedic Hand Clinic at SUNY Upstate Medical University Hospital. An appointment was scheduled for January 23, 2002.

During this time, Plaintiff was administered 800 milligrams of Motrin for pain. The medication was administered on December 15, 16, 17, 18, 20, 22, 23, and 25, 2001. On December 25, 2001, Plaintiff submitted a request for more Motrin. On December 31, 2001, Plaintiff was seen by Dr. Johnston for treatment to his finger. Johnston ordered a one month prescription of 600 milligrams of Motrin.

On January 9, 2002, Plaintiff was against treated in the medical unit. At that time, Plaintiff was noted to have swelling to the joint of the middle finger. Medical staff changed the splint.

Plaintiff was seen at the Hand Clinic on January 23, 2002. Plaintiff was diagnosed with "right middle finger PIP joint dislocation." Plaintiff was sent for pre-surgery testing on January 28, 2002. On January 29, 2002, Plaintiff underwent a volar plate arthroplasty. The surgeon prescribed Vicodin for Plaintiff's post-surgery pain. Following surgery, Plaintiff returned to the OCCF for recuperation.

Upon his return from surgery, Plaintiff was provided Motrin instead of the Vicodin. This was done purportedly due to OCCF restrictions on the distribution of narcotics. While at OCCF, Plaintiff was provided with follow-up treatment, including physical therapy and further x-rays.

On May 17, 2002, Plaintiff underwent a second surgery to his finger to release joint contracture. Following surgery, Plaintiff was prescribed 800 milligrams of Motrin and his finger was splinted. Plaintiff was then returned to the OCCF. Plaintiff was next seen at the Hand Clinic on May 22, 2002. Records note that Plaintiff was doing "some active motion post-op but has not been doing aggressive passive motion as was instructed by us." On May 24, 2002, Plaintiff was seen at the University Hospital Emergency Department with complaints of middle finger pain. Plaintiff was advised to continue taking the 800 milligrams of Motrin, to ice and elevate his hand, and to continue with the flexion and extension exercise ordered by Dr. Mosher (the physician who performed the second surgery). Plaintiff received follow-up treatment, including physical therapy and pain management on May 29, June 26, August 7, and September 11, 2002.[1]

"The medical records . . . show that while Plaintiff was in the custody of the Defendants, and more specifically the period of time between Plaintiff's injury on December 15, 2001 through his surgery at the Orthopedic Hand Clinic on January 25, 2002, and all

---

[1] This statement of fact is set forth in Defendants' Rule 7.1(a)(3) Statement of Material Facts at paragraph 31. In opposition, Plaintiff responded as follows: "Neither admit nor deny." Because Defendants' statement is supported by a citation to the record where the fact is established, it was incumbent upon Plaintiff to respond by either "admitting and/or denying" Defendants' assertion. Any denial was required to be supported by a citation to the record where the factual issue arises. See N.D.N.Y.L.R. 7.1(a)(3). Plaintiff's response does not conform to the requirements of this Rule. Because Plaintiff did not specifically controvert this factual assertion, it is deemed admitted. Id. ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

through the follow-up care administered thereafter up to September 11, 2002, Plaintiff was provided reasonable and necessary medical care by the medical personnel at both [OCCF] . . . and the Orthopedic Hand Clinic." Def.'s Stmnt. of Material Facts at ¶ 32.[2]

Plaintiff was released from the OCCF on November 4, 2002.  Thereafter, Plaintiff failed to keep his December 11, 2002 appointment at the Hand Clinic.  Plaintiff's last appointment at the Hand Clinic was on January 8, 2003.  The medical records show that Plaintiff had "stiff PIP join R LF [right middle finger] now but with minimal pain.  Further contraction release unlikely to help.  Not having enough pain to consider fusion." Id. at ¶ 35.  Plaintiff also was noted to have left the clinic "prior to nursing discharge." Id.  This was the last treatment Plaintiff had for his finger.

On June 16, 2004, Plaintiff re-injured his right hand when he punched a wall.  Plaintiff denies injuring his middle finger at this time.  The medical records reflect that Plaintiff fractured and minimally dislocated the distal 4th and 5th metacarpals of his right hand, for which a volar splint was applied.  Upon examination, Plaintiff's attending physician found "swelling over the PIP joint which is nontender in the middle finger, he has limited range of motion of the middle finger which he says is chronic." Id. at ¶ 39.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp.

---

[2] In his responsive statement of material facts, Plaintiff admitted to this factual assertion by Defendants.

v. Catrett, 477 U.S. 317, 322 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### III.   DISCUSSION

#### a.   Motion to Preclude Expert Testimony

Defendants move to preclude Plaintiff's expert witness. Plaintiff concedes this issue. See Pl.'s Mem. of Law at 2. Accordingly, Defendants' motion is GRANTED.

#### b.   Plaintiff's Eighth Amendment Claims

The sole basis for Plaintiff's Eighth Amendment claim is that "the denial of hospital treatment for approximately one month after the injury was a violation of his constitutional right to adequate medical treatment. . . . Plaintiff does not claim any cause of action for negligence or medical malpractice nor does he claim that the injury was exacerbated by the delay. The claim is based upon the fact that in spite of having a known fracture and being in

pain the plaintiff was neither taken to a hospital nor to the specialists at the Hand Clinic until thirty-eight (38) days had elapsed from the original injury." Pl.'s Mem. of Law at 3.

To succeed on his Eighth Amendment claim, Plaintiff must demonstrate that: (1) he suffered from a sufficiently serious injury; and (2) that Defendants acted with a deliberate disregard for that injury. Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005). The first inquiry is objective, whereas the second is subjective. Id. To establish deliberate indifference, Plaintiff must prove that the charged official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id, (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)). As the Second Circuit has explained:

> "Deliberate indifference" describes a mental state more blameworthy than negligence; but a plaintiff is not required to show that the defendant acted for the "very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Estelle [v. Gamble], 429 U.S. [97], 104, 97 S. Ct. 285). Deliberate indifference is "a state of mind that is the equivalent of criminal recklessness." Hathaway v. Coughlin ("Hathaway II"), 99 F.3d 550, 553 (2d Cir. 1996). A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " Chance [v. Armstrong], 143 F.3d [698], 703 [(2d Cir. 2998)] (quoting Hathaway II, 99 F.3d at 553).

Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).

For purposes of analysis, the Court will assume, without deciding, that Plaintiff suffered from a sufficiently serious injury. The question then turns to whether Defendants were aware of that injury, but nonetheless disregarded the risk of serious harm. As previously noted, Plaintiff admitted that he received "reasonable and necessary medical care

by the medical personnel at [OCCF]. . ." during "the period of time between Plaintiff's injury on December 15, 2001 through his surgery at the Orthopedic Hand Clinic on January 25, 2002, and all through the follow-up care administered therafter up to September 11, 2002. . . ." Def.'s Stmnt. of Material Facts at ¶ 32.  Through this admission, Plaintiff concedes that Defendants provided him with adequate care, thereby defeating his claim that they acted with deliberate indifference.  Regardless of this admission, the record evidence unequivocally demonstrates that Defendants were aware of, but did not ignore, his injury.  Rather, the record reveals that he was seen in the medical unit shortly after his injury, he was seen again the next day where he was examined by a physician, and that he was continually monitored thereafter and up through the date of surgery.  During this period of time, Plaintiff's finger was immobilized and he was given medication for pain.  Plaintiff also was restricted from work and recreation.  Although there is a period of fourteen days before his January 28, 2002 pre-surgery testing during which Plaintiff apparently was not seen by any medical staff, during this period of time, his finger was splinted, he was prescribed 800 milligrams of Motrin for his pain, Defendants evaluated the need to send Plaintiff to the Hand Clinic, Defendants obtained consent to send Plaintiff to the Hand Clinic, Defendants scheduled Plaintiff for an appointment with the Hand Clinic for January 23, 2002, and Plaintiff was scheduled for surgery on January 29, 2002.  From these facts, a fair-minded trier of fact could only reasonably conclude that Defendants did not act with deliberate indifference towards a serious medical need.

      Even if Plaintiff could establish an Eighth Amendment claim, he has failed to demonstrate any basis for imposing liability upon the municipal Defendants.  Plaintiff has not sued any individuals, but, rather, has sued the Onondaga County Department of Corrections

and the County of Onondaga. These two entities are one in the same - the County of Onondaga, a municipal corporation of the State of New York. See Solis v. County of Westchester, No. 94 Civ. 5102 (VLB), 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest). A municipality is not vicariously liable under 42 U.S.C. § 1983 for the acts of its employees. Green v. City of New York, 465 F.3d 65, 80 (2d Cir. 2006). To impose liability on a municipality under 42 U.S.C. § 1983, the Plaintiff must demonstrate that the municipality itself caused the claimed constitutional violation through a policy or custom of the municipality or by a municipal official responsible for establishing final policy. Jenkins v. City of New York, — F.3d —, —, 2007 WL 415171, at *11 (2d Cir. Feb. 6, 2007); Skehan v. Village of Mamaroneck, 465 F.3d 96, 108-09 (2d Cir. 2006). Assuming *arguendo* that the failure to send Plaintiff to the hospital was a constitutional violation, Plaintiff has presented no facts upon which a fair-minded trier of fact could reasonably conclude that the failure to send Plaintiff to a hospital was the result of a municipal policy or custom or was the result of a decision made by a final policymaker.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to proffer sufficient facts from which a fair-minded trier of fact could reasonably conclude that Defendants acted with deliberate indifference toward a serious medical need.

**ORDERED**, that Defendants' Motion to preclude Plaintiff's expert testimony and for summary judgment (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) and the case are **DISMISSED** in their **ENTIRETY**; and it is further

> **ORDERED**, that the Clerk serve a copy of this Order on all parties by regular mail.
>
> **IT IS SO ORDERED.**

DATED: March 22, 2007
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge